UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD FRANKLIN FREES,
623134,

    Petitioner,

vs.

THOMAS WINN,

    Respondent.
_____/

Civil Action No. 18-CV-12805

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER GRANTING RESPONDENT'S MOTION TO DISMISS THE HABEAS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

### and

## ORDER GRANTING PETITIONER'S MOTION TO AMEND OR EXPAND THE HABEAS PETITION, AND DENYING PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING

This matter is before the Court on petitioner's pro se petition for a writ of habeas corpus brought under 28 U.S.C. § 2254; respondent's motion to dismiss the petition, to which petitioner has responded; and petitioner's motions to amend or to expand the habeas petition and for an evidentiary hearing. Petitioner is challenging his state convictions for armed robbery, Mich. Comp. Laws § 750.529, and bank robbery, Mich. Comp. Laws § 750.531. He asserts claims of insufficient evidence, prosecutorial misconduct, and ineffective assistance of trial and appellate counsel. Petitioner also asserts that he is actually innocent of the crimes for which he is incarcerated. Respondent argues in his motion to dismiss the petition that petitioner failed to comply with the applicable statute of limitations and that petitioner is not entitled to equitable tolling of the statute. For the reasons stated below, respondent's motion shall be granted, and the

habeas petition shall be dismissed with prejudice. In addition, petitioner's motion to amend or expand his petition shall be granted, but his motion for an evidentiary hearing shall be denied.

**I. Background**

Petitioner was charged with aiding and abetting an armed robbery and bank robbery on April 24, 2006, in Muskegon Township, Michigan. Petitioner waived his right to a jury trial and was tried before a judge in Muskegon County Circuit Court. The Michigan Court of Appeals summarized the trial testimony as follows:

> Defendant's convictions arise from the robbery of a bank by his cousin Keith Eastling, who passed a note to a teller that stated, "I have a gun, 20's and 50's only." The teller gave Eastling $900 in twenty dollar bills that included "bait money." Eastling fled from the bank and entered a truck across the street that pulled into traffic, cutting off several cars. One of the drivers followed the truck into a parking lot and saw the passenger pull a shirt off the truck's license plate. The truck then stopped at another parking lot, where police apprehended both Eastling and defendant, who was driving. Defendant had 14 twenty dollar bills in his pocket, including five bait bills. The remainder of the money was either with Eastling or had been stuffed between the seats of the truck. Defendant initially claimed that he obtained the money by selling scrap metal. Inside the truck the police found a bag from a fast food restaurant that had a piece torn out; the torn piece matched the robbery note. The police also discovered the shirt and hat worn by Eastling during the robbery.
>
> Defendant denied planning the robbery or knowing that Eastling was planning a robbery. He also denied seeing Eastling tear the bag or write a note. Defendant testified that he went into an optical store near the bank to browse for sunglasses while Eastling went into the bank purportedly to cash a check. Defendant claimed that afterward Eastling paid him $280 that he had loaned to Eastling.

*People v. Frees*, No. 275095, 2008 WL 376411, at *1 (Mich. Ct. App. Feb. 12, 2008).

At the close of the trial, the trial court determined that the prosecutor had proved the elements of armed robbery and bank robbery because it was clear that Eastling had committed

2

the charged offenses. The court stated that the real issue was petitioner's state of mind before the robbery and when leaving the scene of the robbery. The court concluded that petitioner assisted Eastling in committing the robbery by driving Eastling to the bank, waiting for him, and driving him away. The court also opined that petitioner knew Eastling intended to commit the robbery at the time petitioner gave assistance. The court found petitioner's testimony to be incredible because petitioner fled from the scene of the crime at a high rate of speed and his statement to the investigating detective conflicted with his trial testimony. The court also found it unlikely that petitioner did not know what Eastling intended to do because the two men were seated next to each other in the vehicle that was used in the robbery. Accordingly, the court convicted petitioner, as charged, of armed robbery and bank robbery. 10/04/06 Trial Tr. at 106-14 (PageID.356-64).

On November 7, 2006, the trial court sentenced petitioner to two concurrent terms of twenty-five to thirty-eight years in prison. The Michigan Court of Appeals affirmed petitioner's convictions and sentence, *Frees*, 2008 WL 376411, and on May 27, 2008, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. *People v. Frees*, 748 N.W.2d 856 (Mich. 2008). Petitioner did not apply for a writ of certiorari in the United States Supreme Court, and the deadline for doing so expired on August 25, 2008. *See* Sup. Ct. R. 13.1 (providing ninety days from the entry of a judgment by a state court of last resort to file a petition for a writ of certiorari).

Over six years later, on September 24, 2014, petitioner filed a motion for relief from judgment. He claimed, among other things, that he had newly discovered evidence to support his allegations that he had no prior knowledge of Eastling's intent to commit a bank robbery and that

3

he was not involved in an unarmed robbery of a market on the previous day.[1] On January 28, 2015, the trial court denied petitioner's motion for relief from judgment because petitioner had not

---

[1] In its decision affirming petitioner's convictions and sentence, the Michigan Court of Appeals discussed the evidence surrounding the unarmed robbery of a market:

> According to a cashier at Born's market, when she opened the till, Eastling reached over and grabbed all of the twenty dollar bills, ran out to a red pickup truck, entered on the passenger side, and shouted, "Go." The driver drove into traffic at a high rate of speed. Items, including some blue tile, went "flying" from the back of the truck. The license plate of the truck from this incident matched that of the truck used in the bank robbery. The tile was the same as that recovered from the truck used in the robbery. Although neither the cashier nor the driver who observed the truck leaving the parking lot could identify defendant, the cashier's description of the driver's race and gender was consistent with defendant. Defendant told the police that he was home all afternoon and evening on the date of the grocery store robbery and that Eastling was with him. At trial, defendant did not remember telling the police that neither he nor Eastling left the trailer. He testified that Eastling and defendant's brother left for a couple of hours.

*Frees*, 2008 WL 376411, at *1. The court of appeals

> agree[d] with the trial court that the evidence concerning the unarmed robbery of the grocery store was probative of defendant's knowledge that Eastling was robbing the bank at the time defendant provided assistance. Defendant's knowledge was relevant to an issue or fact of consequence at trial because defendant was convicted under an aiding and abetting theory and knowledge of the principal's intent to commit the charged offense at the time assistance is provided is necessary to establish guilt under an aiding and abetting theory. *Crawford, supra*, pp 388–389, 582 N.W.2d 785. Further, the risk of unfair prejudice was minimized because this was a bench trial and the judge's understanding of the law allowed him to use the evidence only for its proper purpose. See *People v. Taylor*, 245 Mich.App. 293, 305, 628 N.W.2d 55 (2001) (A judge's understanding of the law enables him to ignore errors and decide a case solely on the properly admitted evidence). Accordingly, the court did not abuse its discretion in allowing this evidence at trial.

*Id.* at *2.

shown good cause for his failure to raise his claim of actual innocence in his pro se brief on appeal. *People v. Frees*, No. 06-53214-FC (Muskegon Cty. Cir. Ct. Jan. 28, 2015); *see* docket entry 9-8.

On April 4, 2016, the Michigan Court of Appeals denied leave to appeal because petitioner had failed to establish that the trial court erred in denying his motion for relief from judgment. *People v. Frees*, No. 331752 (Mich. Ct. App. Apr. 4, 2016); *see* docket entry 9-9. On November 30, 2016, the Michigan Supreme Court denied leave to appeal because petitioner had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Frees*, 887 N.W.2d 398 (Mich. 2016).

On August 4, 2018, petitioner signed his habeas petition. He claims that he placed his petition in the prison mailing system on September 4, 2018. The Clerk of Court received and filed the petition on September 7, 2018. The Court understands the grounds for relief asserted in the petition to be:

> I. Newly discovered or newly presented evidence
>
> Affidavits from a co-defendant and another inmate state that Mr. Frees had no knowledge of the bank robbery.
>
> II. Inaccurate and insufficient evidence
>
> 404B evidence brought out at trial was insufficient and was more prejudicial than probative because (1) the eyewitness did not identify Mr. Frees, only the vehicle, and (2) the co-defendant's out-of-court statement exculpated Mr. Frees. The co-defendant also admitted to owing Frees money, thereby, accounting for the bait money.
>
> III. Prosecutorial abuse/misconduct
>
> Affidavits from Keith Eastling and Sean Ellesin show misconduct by the prosecutor.
>
> IV. Ineffective assistance of trial and appellate counsel

>Trial counsel failed to request a postponement in order to obtain exculpatory evidence from the co-defendant. Appellate counsel failed to rely on this dead-bang winner. Trial counsel failed to challenge 404B evidence presented at trial.

*See* Pet. at 6, 8-9, 11 (PageID.5, 7-8, 10); *see also* Pet'r's Br. in Supp. of Pet. at 18-36 (PageID.35-54). As noted above, respondent contends that these claims are barred from substantive review by petitioner's failure to comply with the statute of limitations.

## II. Analysis

### A. The Statute of Limitations

This case is subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because petitioner filed his petition after AEDPA became effective. *Davis v. Bradshaw*, 900 F.3d 315, 323 (6th Cir. 2018). AEDPA establishes a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of the following four dates:

>(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "AEDPA also contains a tolling provision, which specifies that '[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period

of limitation under this subsection.'" *Holbrook v. Curtin*, 833 F.3d 612, 615 (6th Cir. 2016) (quoting 28 U.S.C. § 2244(d)(2)).

Petitioner has not alleged that respondent impeded his efforts to file a timely petition, and he is not relying on a newly recognized constitutional right. *See* 28 U.S.C. § 2244(d)(1)(B)-(C). He does purport to have "newly discovered or newly presented evidence" supporting his claim of innocence. Pet'r's Br. in Supp. of Pet. at 18 (PageID.35). This evidence consists of three affidavits from Eastling and an affidavit from an inmate named Shawn Ellesin.

In an undated affidavit, Eastling writes that petitioner did not know that Eastling planned to rob the bank nor that Eastling had robbed the market the day before. Eastling Aff. I (PageID.67). Eastling also avers that he would have testified for petitioner, but the prosecutor threatened to withdraw his plea offer and ask for the maximum sentence in Eastling's case if Eastling testified for petitioner.

In a second affidavit, which was signed on July 23 and on July 24, 2014, Eastling repeats that petitioner did not know he planned to rob the bank. Eastling Aff. II (PageID.68, 106-07).[1] Eastling goes on to say that he merely asked petitioner to drive him to the bank so that he could cash a check and repay petitioner the money that he had borrowed from petitioner. Eastling also states that after he and petitioner were arrested he informed an officer that petitioner did not know he planned to rob the bank. His attorney, however, advised him not to testify about petitioner's state of mind because Eastling would be implicating himself in the crime. Eastling

---

[1] The scanned copy of petitioner's habeas petition does not include a complete copy of Eastling's second affidavit or Ellesin's affidavit. Respondent, however, attached the complete affidavits to his motion to dismiss.

explains that, after petitioner's trial, he accepted the prosecutor's plea offer, and he did not know until recently what happened to petitioner.

In a third affidavit, which is also dated July 23 and July 24, 2014, Eastling writes that petitioner had nothing to do with the unarmed robbery that occurred at the market on the day before the bank robbery. Eastling Aff. III (PageID.69). Eastling claims that although he borrowed petitioner's truck for the robbery, petitioner did not know he was going to use the truck to commit a crime. Eastling states that "myself and another individual were and are responsible for that crime." *Id.*

Ellesin writes in his affidavit that Eastling is his friend and that when he and Eastling were incarcerated together, Eastling informed him about the bank robbery. Ellesin Aff. (PageID.66, 108-09). According to Ellesin, Eastling said he was unable to testify for petitioner because the prosecutor threatened to withdraw his plea offer and ask for the maximum sentence if Eastling testified for petitioner. Eastling also informed Ellesin that the prosecutor thought petitioner should go to prison for the rest of his life, and when petitioner's lawyer asked Eastling to testify for petitioner, Eastling "just acted crazy." *Id.* at 1 (PageID.66, 108). Additionally, Eastling said that he informed the police upon his arrest that petitioner did not know he was planning to rob the bank and that petitioner was not in the truck used to rob the market.

The main purpose of these affidavits apparently is to show that petitioner did not know Eastling intended to commit a crime and, therefore, petitioner was not guilty of aiding and abetting Eastling in the bank robbery. But petitioner admits that his trial attorney knew about Eastling's exculpatory remark to the police. *See* Pet'r's Br. in Supp. of Pet. at 23 (PageID.40); *see also* Pet'r's Mot. to Amend or Expand Pet. In addition, petitioner argued in a pro se supplemental brief on direct appeal that the trial court erred by not permitting him to introduce Eastling's

8

statement to a detective that petitioner did not know Eastling planned to rob the bank. *See* Appellant's Standard 4 (Pro-Per) Br. on Appeal at 10-12, Mich. Ct. App. No. 275095 (PageID.429-31); *see* docket entry 9-4. Because the factual predicate for petitioner's claim of actual innocence was known to him well before his convictions became final, he is not entitled to a delayed start of the statute of limitations under 28 U.S.C. § 2244(d)(1)(D).

The relevant subsection here is 28 U.S.C. § 2244(d)(1)(A), which states that a conviction becomes final at "the conclusion of direct review or the expiration of the time for seeking such review." The Supreme Court has explained that

> [f]or petitioners who pursue direct review all the way to [the Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.

*Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (alterations added).

Petitioner did not apply for a writ of certiorari in the Supreme Court. Therefore, his conviction became final on August 25, 2008, ninety days after the Michigan Supreme Court denied leave to appeal on direct appeal. Sup. Ct. R. 13.1. Petitioner then had one year to file his habeas petition or a post-conviction motion that would toll the limitations period. Petitioner took no action in state or federal court during that year. Consequently, the statute of limitations expired on August 25, 2009. His motion for relief from judgment, which was filed in September of 2014, did not revive the limitations period or restart the limitations clock. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Thus, the habeas petition is untimely, absent equitable tolling of the limitations period or a credible claim of actual innocence.

9

### B. Equitable Tolling

AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). But a habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner is not entitled to equitable tolling of the limitations period because he has not shown that he was pursuing his rights diligently. The record indicates that petitioner did not pursue any state or federal remedies from May 2008, when the Michigan Supreme Court denied leave to appeal on direct review, until September 2014, when petitioner filed his motion for relief from judgment.

Petitioner also has not shown that some extraordinary circumstance prevented him from filing a timely habeas petition. He alleges that he did not acquire Eastling's affidavits until 2014 and that he filed his motion for relief from judgment a short time later. However, he waited more than a year to file his habeas petition after the state courts concluded their review of his motion for relief from judgment. Therefore, the petition would be untimely even if the statute of limitations did not begin to run until after the conclusion of the post-conviction proceedings.

### C. Actual Innocence

Actual innocence, if proved, serves as a gateway through which a habeas petitioner may pass when the impediment to consideration of the merits of his constitutional claims is the expiration of the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The Supreme Court, however, has cautioned "that tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that,

in light of . . . new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (alterations added).

Petitioner invokes the actual innocence exception on the basis of Eastling's and Ellesin's affidavits. In the new trial context, however, pleadings "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Ellesin's affidavit can be discounted for the additional reason that it is based on hearsay, as opposed to personal knowledge. *See id*. (concluding that the petitioner's affidavits were particularly suspect because, with one exception, they consisted of hearsay).

Eastling's affidavits also are problematic. His primary allegation is that petitioner did not know he intended to rob a bank. This is not new evidence, however, as petitioner's attorney tried to introduce Eastling's exculpatory allegation about petitioner during petitioner's trial. 10/4/06 Trial Tr. at 40-41 (PageID.290-91).

Moreover, Eastling had nothing to lose by taking the blame for the bank robbery and claiming that petitioner did not know he intended to commit the robbery. Eastling took advantage of the prosecutor's plea offer, received a lighter sentence than petitioner, and had his sentence for unarmed robbery further reduced after he filed a motion to correct an invalid sentence. *People v. Eastling*, No. 281837, 2008 WL 4927229, at *1 (Mich. Ct. App. Nov. 18, 2008). Indeed, Eastling states in his undated affidavit that "[o]n appeal I received a lesser sentence and have since

11

learned that the prosecutor cannot get me back to court and retry me so that's why I am writing these affidavits." Eastling Aff. I (PageID.67). As the Ninth Circuit Court of Appeals pointed out in *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992),

> [i]t would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves. They may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial. Such testimony would be untrustworthy and should not be encouraged.

Another problem with Eastling's affidavits is that he waited almost eight years after petitioner's trial and over five years after his own sentences became final in 2008 to sign them. Long-delayed affidavits that seek to exonerate a petitioner and blame someone else for the crime must "be treated with a fair degree of skepticism." *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring). Finally, the record indicates that Eastling is petitioner's cousin, and there is a risk of bias in affidavits made by close friends or relatives of the petitioner. *See Cleveland v. Bradshaw*, 693 F.3d 626, 641 (6th Cir. 2012).

Petitioner has not presented to the Court any new and reliable evidence of actual innocence. Therefore, his claim of actual innocence fails.

### III. Conclusion

Petitioner's habeas petition is untimely. He is not entitled to equitable tolling of the limitations period, and his claim of actual innocence is not tenable. Accordingly,

IT IS ORDERED that respondent's motion to dismiss the habeas petition is granted, and the habeas petition is dismissed with prejudice.

IT IS FURTHER ORDERED that petitioner's motion to amend or to expand his petition is granted, but petitioner's motion for an evidentiary hearing is denied.

IT IS FURTHER ORDERED that a certificate of appealability is denied because reasonable jurists could not debate whether the petition states a valid claim of the denial of a constitutional right or whether the Court's procedural ruling is correct. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS FURTHER ORDERED that leave to appeal in forma pauperis is denied because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

Dated: June 6, 2019
Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR U.S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on June 6, 2019.

Gerald Franklin Frees, 623134
Thumb Correctional Facility
3225 John Conley Dr
Lapeer, MI 48446-2987

s/Johnetta M. Curry-Williams
Case Manager